**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| S&G JANITSCHKE, INC., a Minnesota corporation, A&T JANITSCHKE, INC., a Minnesota corporation, SHARIE JANITSCHKE, an individual, DAN HARRINGTON, an individual, RD&M, INC., an Iowa corporation, RD TRANS, INC, an Iowa corporation, SLOTSKY ENTERPRISES, INC., an Iowa corporation, JAMES HODINA, an individual, SHAWN HODINA, an individual, DOUGLAS R. SPEER, an individual, D&C SPEER INVESTMENTS, LLC, a Wisconsin limited liability company, JESSENEM CORPORATION, an Illinois corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| COTTMAN TRANSMISSION SYSTEMS, LLC, a Delaware limited liability company, ROSS ADVERTISING, INC., a Pennsylvania corporation, TODD P. LEFF, an individual, | ) ) ) ) ) ) ) |
| Defendants. | ) |

COURT FILE NO. _____

COMPLAINT AND JURY DEMAND

Plaintiffs Sharie Janitschke, S&G Janitschke, Inc., A&T Janitschke, Inc., Dan Harrington, RD&M, Inc., RD Trans, Inc., James Hodina, Shawn Hodina, Slotsky Enterprises, Inc., Douglas R. Speer, D&C Speer Investments, LLC, and Jessenem Corporation ("Plaintiffs"), by their attorneys, Dady & Garner, P.A., for their Complaint against Defendants Cottman Transmission Systems, LLC ("Cottman"), Ross

Advertising, Inc. ("Ross"), and Todd. P. Leff (collectively "Defendants"), allege as follows:

## NATURE OF ACTION

This is an action in which Plaintiffs, current and former franchisees of the Cottman Transmission Franchise System (the "Cottman System"), seek to recover losses they have sustained as a result of Defendants' violations of their statutory and common law duties.   Plaintiffs seek to rescind their franchise agreements, obtain compensatory damages, an accounting of payments made by Plaintiffs to Defendants for advertising fees, the disgorgement of payments made to Defendants for advertising fees, and attorneys' fees, for Defendants' intentional and negligent fraud, breaches of contract and fiduciary duty, and violations of state franchise statutes, consumer unfair trade practices statutes, and the federal RICO Statute.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of the Complaint pursuant to 28 U.S.C. § 1331 because this Court has original jurisdiction over Counts Eleven through Thirteen (violations of the federal RICO Statute), and because this Court has supplemental jurisdiction over the remaining Counts pursuant to 28 U.S.C. § 1367.

2.     This court has jurisdiction over the parties pursuant to 28 U.S.C. § 1332, in that the parties are diverse and the amount in controversy exceeds $75,000.

3.     Venue in this District is proper under 28 U.S.C. § 1391 because a substantial number of the acts and transactions forming the basis of the Complaint took place within this District.   Further, because Plaintiffs' Sharie Janitschke, S&G Janitschke, Inc. and A&T Janitschke, Inc.'s franchise agreements provide that

"Minnesota Statute Sec. 80C.21 and Minn. Rule 2860.440J prohibit us from requiring litigation to be conducted outside Minnesota," it is appropriate for this action to be venued in this court.

4.     Venue is proper as to Plaintiffs Dan Harrington, RD&M, Inc., RD Trans, Inc., James Hodina, Shawn Hodina, Slotsky Enterprises, Inc. because the Iowa Franchise Act, Iowa Code § 537A.10 prohibits enforcement of a forum selection clause restricting jurisdiction to a forum outside the State of Iowa for claims arising under the Iowa Franchise Act.

5.     Venue is proper as to Plaintiffs Douglas R. Speer and D&C Speer Investments, LLC because the Wisconsin Franchise Investment Act, Wis. Stat. §§ 533.01 et seq., prohibits the enforcement of any provision, such as a forum selection clause, that waives compliance with any provision of the Wisconsin Franchise Investment Law.  Wis. Stat. § 533.16.

6.     Venue is proper as to Plaintiff Jessenem Corporation because the Illinois Franchise Investment Law, Ill. Comp. Stat. 705/1 et seq., prohibits the enforcement of any provision, such as a forum selection clause, that waives compliance with any provision of the Illinois Franchise Investment Law.  Ill. Comp. Stat. § 705/41.

7.     Each of the Defendants is subject to jurisdiction in this District because they engaged in the wrongful acts alleged in this Complaint within this District, causing injury within this District; or because they contracted to provide goods or services in Minnesota; or because they offered or sold, or participated in the offer or sale of franchises within Minnesota.

**PARTIES**

8.     Plaintiffs are current and former franchisees of the Cottman System who signed franchise agreements with Cottman (or its predecessor).  The name and address of each Plaintiff is set forth on Exhibit 1 hereto and incorporated herein by reference.

9.     Cottman is a Delaware limited liability company that was formed in July 2000.   Its principal place of business is 240 New York Drive, Fort Washington, Pennsylvania.  Cottman is the franchisor for every Plaintiff.  Cottman's predecessor in interest, Cottman Transmission Systems, Inc. ("Cottman, Inc.") first did business in 1962 (Exhibit 2, p.2).  In July 2000, Cottman, Inc. and Cottman merged, with Cottman being the surviving entity.  In addition to being the franchisor of the Cottman System, Cottman is affiliated with Ross Advertising, Inc. ("Ross"), a Pennsylvania corporation, which is an advertising agency.   Cottman is also affiliated with Cottman Communications, Inc. ("Cottman Communications"), an entity that owns the telephone numbers and listings of Cottman's franchisees.   Leff is an individual, and, upon information and belief, a resident of the State of Pennsylvania.  Leff is both President and Chief Executive Officer of Cottman, positions which he has held, upon information and belief, since 1998.  As President and Chief Executive Officer of Cottman, Leff has direct control of Cottman and has materially aided in the pre-signing representations made to Plaintiffs

**FACTS**

**AUTOMOTIVE TRANSMISSION REPAIR**

10.     Since the 1960s, Cottman (or a predecessor in interest) has been engaged in the sale of franchises to operate Cottman Transmission Centers, which are businesses that specialize in the repair of automotive transmissions.

11.    An automotive transmission is the single most complex "part" in today's automobiles.  A modern automatic transmission contains mechanical systems, hydraulic systems, electrical systems, and computer controls, all within one single component.

12.    It is, therefore, not surprising that transmissions are one of the most expensive components to repair on modern automobiles – an overhaul of a transmission, *i.e.*, repairs so extensive that it cannot be fixed by adjustment or by replacement of accessible parts, can cost several thousand dollars.

13.    A transmission overhaul can be done in one of two ways, both of which achieve the same result.  The first type of transmission overhaul is a "rebuild," which involves the complete disassembly of the transmission, the inspection of all internal parts, the replacement of the worn or damaged parts, reassembly and then reinstallation on the vehicle.  Rebuilds are performed at a shop by a highly-skilled transmission technician who must know how to rebuild transmissions for a variety of manufacturers' and vehicles' specifications (a "Transmission Rebuilder").

14.    The second way to overhaul a transmission is to replace the old transmission with a transmission that has already been rebuilt by somebody else, at a different location than the transmission repair shop. In this type of a repair, the replacement transmission is known as a "remanufactured" transmission.

15.    For transmission repair shops, including those in the Cottman System, rebuilds are the preferred choice.  While the retail costs of the two types of overhauls are comparable, the profit margins for rebuilds are much higher.  This is because the work of a transmission repair shop is based on the hours of work of the Transmission Rebuilder.  Without an experienced, qualified Transmission Rebuilder, a transmission

repair business is severely handicapped, and can only use remanufactured transmissions.

## THE COTTMAN SYSTEM

16.     Currently, Cottman claims that there are over 400 Cottman Transmission Centers operating in the United States and Canada. (See Exhibit 4). Out of 400 stores, less than 20 are company owned and operated – the remaining stores are owned and operated by franchisees pursuant to a franchise agreement with Cottman. These franchised stores make up the Cottman System.

17.     Before selling a franchise, franchisors such as Cottman are required by both federal and many states' laws to deliver a Uniform Franchise Offering Circular to prospective franchisees. A UFOC is required to contain truthful information about a franchise that can be relied upon by a prospective franchisee in making a decision to purchase a franchise. Exhibit 2 is a September 30, 2002 UFOC, which was produced by Cottman and delivered to Plaintiff Dan Harrington; Exhibit 2 is representative of the UFOCs that Cottman produced and provided to the other Plaintiffs

## COTTMAN'S REPRESENTATIONS TO PLAINTIFFS

18.     Plaintiffs are all current or former franchisees of the Cottman System who signed, either individually or through a business entity, a franchise agreement with Cottman. Prior to signing their franchise agreements, Cottman was required (by federal and some states' laws) to provide each prospective franchisee a UFOC, which made certain disclosures about the Cottman System (see fn.2). The information contained in Cottman's UFOC was required, under both federal and state law, to be accurate, complete, truthful, and not misleading, so that prospective franchisees could rely upon it

when deciding to purchase a franchise.  In addition to the representations made in the UFOC, Cottman also made other representations about the Cottman System to convince Plaintiffs to sign their franchise agreements.   As President and Chief Executive Officer of Cottman, Leff has direct control of Cottman and has materially aided in the pre-signing representations made to Plaintiffs.   Cottman's pre-signing representations to Plaintiffs included the following:

    i.    That Cottman System franchisees do not need automotive experience to succeed (see, e.g., Exhibit 5, p.1);

    ii.    That Cottman System franchisees could expect to "break even," i.e., to have neutral or positive cash flows, within two to three months after opening.

    iii.    That the average sales for Cottman System franchisees were over $500,000 (Exhibit 2, pp. 39, 138-142);

    iv.    That the average profit realized by Cottman System franchisees was over $100,000 (Exhibit 2, pp. 39, 138-142);

    v.    That a minimal number of Cottman System franchisees had closed their franchised stores in the previous years (see, e.g., Exhibit 2, pp. 40-41);

    vi.    That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets (Exhibit 2, p. 33);

    vii.    That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media (Exhibit 2, p. 33);

    viii.    That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center."  (see, e.g., Exhibit 3, ¶ 9(c); Exhibit 5, p.2);

    ix.    That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance,

demographic studies and site ranking, financing assistance, and store layout and design assistance (see, e.g., Exhibit 6; Exhibit 3, ¶ 5);

x.   That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians (see, e.g., Exhibit 3, ¶ 5; Exhibit 5; Exhibit 6);

xi.   That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff." (see, e.g., Exhibit 4, p.1); and

xii.   That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores (see, e.g., Exhibit 4, p.1).

## PLAINTIFFS' RELIANCE

19.   In reliance upon the representations made by Cottman, the Plaintiffs, either individually or through a business entity, signed a franchise agreement with Cottman and paid Cottman an initial franchise fee.   Plaintiffs also spent additional amounts to outfit and open their Cottman System stores, investing over $200,000. Much of this initial investment was paid to Cottman to purchase equipment and supplies (Exhibit 2, Item 7, p.17-26).

20.   Plaintiffs also agreed to pay Cottman a continuing franchise fee of 7.5% of gross revenues and a weekly advertising fee of up to $730 a week.   (Exhibit 2, Franchise Agreement, ¶¶ 8-9).

## THE FALSITY OF COTTMAN'S REPRESENTATIONS

21.   After becoming Cottman System franchisees and opening their Cottman System stores, Plaintiffs discovered the truth about many of the representations made by Cottman.  In particular:

i.   Plaintiffs without any automotive experience discovered that they were at a distinct disadvantage – they were unable to develop a successful

business without knowledge of the details of the transmission repair business, were unable to locate skilled Transmission Rebuilders that were necessary to make a profit, and were unable to rebuild the transmissions themselves;

ii.   Plaintiffs have now found that their Cottman System stores did not "break even" after two to three months –Plaintiffs never broke even after many months of operating their stores;

iii.   Plaintiffs have discovered that the earnings claims provided by Cottman, *i.e.*, that Cottman System franchisees averaged over $500,000 a year, were inaccurate and misleading; the actual average of all franchisees' annual sales and income was much lower;

iv.   Plaintiffs have discovered that Cottman's claims that Cottman System franchisees averaged profits of over $100,000 a year was misleading – the amount of profits was dependent upon hiring an experienced, skilled Transmission Rebuilder, and that, without a skilled Transmission Rebuilder, a franchisee was forced to use remanufactured transmissions which made achieving those levels of profits impossible.  Moreover, the expenses listed were inaccurate and did not reflect what Plaintiffs actually experienced, and Cottman was unwilling or unable to assist Plaintiffs in achieving better results;

v.   Plaintiffs have discovered that Cottman's representations of the number of franchisees who closed or otherwise failed in operating their Cottman System stores were misleading.  Cottman has established a pattern of refusing to allow franchisees to close a failing store, using threats of legal action and other coercion to force many franchisees to continue operating until the franchisee was forced to "transfer" a franchise, to Cottman or another franchisee, for a fraction of their franchise investment;

vi.   Plaintiffs have discovered that Cottman did not provide effective local and regional advertising through Ross – Ross charged Plaintiffs' advertising accounts for advertising that was never placed, was placed erroneously, and/or charged Plaintiffs' for higher than market rates.  Moreover, Cottman and Ross have consistently refused, or have been unable, to provide franchisees with complete and accurate accountings of individual advertising accounts;

vii.   Plaintiffs have discovered that Cottman has charged more than 10% commission on advertising placed by Ross when no commission is paid directly by the media;

viii.   Plaintiffs discovered that Cottman failed to provide effective pre-opening services to Plaintiffs, including the failure to provide an effective "intensive owner's training program" – the actual training program consisted of three weeks spent at Cottman's home office learning sales scripts designed to "hard-sell" transmission services to customers, with no time dedicated to learning about the technical aspects of transmission repairs at a Cottman System store;

ix.   Cottman failed to provide "complete and total support" upon opening, including Cottman's failure to provide a final week of training on-site at Plaintiffs' stores, and a failure to provide effective assistance in locating skilled Transmission Rebuilders for franchisees, without which it was impossible to successfully operate as a Cottman System franchise;

x.   Cottman failed to provide franchisees with a list of "top notch technical staff" qualified to work at Plaintiffs' stores;

xi.   Upon information and belief, Cottman maximizes its profits by "churning" franchise stores, i.e., it sells franchised stores over and over at a profit, through a scheme that involves Cottman's: (1) overstating the likelihood of success of a franchise or the results achieved by previous franchisees; (2) committing numerous breaches of duties owed to franchisees that make the successful operation of a Cottman franchise extremely difficult; (3) coercing franchisees to continue to operate failing franchises long enough to sell the store and equipment back to Cottman at a significant loss for the franchisee; and (4) reselling the same franchise and equipment to a new franchisee at significant profit to Cottman.

22.   As a result of the material misrepresentations and omissions by Cottman, Plaintiffs entered into their franchise agreements upon false pretenses, and purchased and invested in franchises that did not conform to the representations that had been made to them.  Plaintiffs, as a result, have suffered substantial damages because the franchises they purchased were not as represented and Plaintiffs are therefore entitled to rescind their franchise agreements with Cottman and to recover the present value of their lost investment in their Cottman System franchises, so that they are returned to the same position they would be in had they never become Cottman System franchisees.

Plaintiffs are therefore prepared to tender everything of value that they received under their franchise agreements to Cottman.

## COTTMAN'S BREACHES OF CONTRACT AND OTHER DUTIES

23.     During the time that Plaintiffs have been franchisees in the Cottman System, Cottman has materially breached contractual and other legal obligations to the Plaintiffs that have caused damages to them separate and distinct from the damages that they sustained as rescission damages.   Cottman's material breaches of its contractual duties to Plaintiffs include the following:

     i.    Cottman failed to provide an "intensive owner's training program" to Plaintiffs, and failed to provide one week of on-site training to new Plaintiffs;

     ii.    Cottman failed to provide effective assistance to Plaintiffs in locating and evaluating skilled Transmission Rebuilders for Plaintiffs to employ;

     iii.    Cottman failed to provide appropriate and effective advertising for the Plaintiffs' regional and local markets; and

     iv.    Cottman failed to properly credit Plaintiffs' accounts for warranty work that the Plaintiffs performed;

24.     As a result of Cottman's breaches of contract, Plaintiffs have suffered damages in an amount to be determined at trial, but which are separate and apart from the rescission damages that they have incurred investing in the franchise.

25.     In addition to breaches of contractual duties, during the time that Plaintiffs have been franchisees of the Cottman System, Defendants breached fiduciary duties owed to Plaintiffs.  Plaintiffs paid Cottman to purchase and place their local and regional advertising; payments to Cottman included a Grand Opening Advertising Fee for some Plaintiffs, and an Ongoing Advertising Fee (up to $730 a week) for all Plaintiffs that was

to be used by Cottman to pay for advertising, for national advertising, as well as for regional and local advertising for each franchisee (Exhibit 3, ¶ 9; Exhibit 4, p. 2).

26.    Ross, an affiliate of Cottman, acted as Cottman's captive advertising agency, and placed advertising on the Plaintiffs' behalf.  Expenditures made on behalf of Plaintiffs were deducted from an account that was established for each.

27.    Prior to placing advertising, Ross' representatives would often provide franchisees with copies of proposed advertising to allow Plaintiffs the opportunity to correct errors and provide advice and input.  In addition, Plaintiffs would, at times, direct the type of advertising to be placed for that franchisee's market.

28.    Cottman was an agent for Plaintiffs because:

    i.    Plaintiffs authorized Cottman and Ross to act on their behalf to purchase and place advertising for Plaintiffs, including the development, purchase and placement of advertising for Plaintiffs' local and regional markets;

    ii.    Cottman agreed, in exchange for payment of advertising fees by franchisees, to purchase and place advertising for Plaintiffs, including Plaintiffs' local and regional markets;

    iii.    Plaintiffs had the ability to control aspects of the purchase and placement of the advertising by Cottman/Ross; and

    iv.    Cottman and certain Plaintiffs entered into listing agreements whereby Cottman expressly agreed to act as that Plaintiffs' exclusive sales agent.

29.    Cottman, as the agent of the franchisees, breached its fiduciary duties in several ways, including:

    i.    Ross placed advertisements for Plaintiffs that contained significant errors;

    ii.    Ross has consistently failed to secure the best possible prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were able to secure lower prices for advertising

themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);

iii.  After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for these "accounts," and Cottman demanded additional payments from Plaintiffs for these advertising fees and threatened to suspend the Center's telephone numbers and advertising when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

iv.  Ross frequently failed to pay for the advertising that Ross placed in local media outlets;

v.  Cottman failed to refund the unspent amounts in Plaintiffs' account when Plaintiffs closed their Centers;

vi.  Cottman has refused to provide Plaintiffs with accountings of their advertising "accounts," including an accounting of the amounts paid and evidence of the purchases and actual placements of advertisements on behalf of the Plaintiffs; and

vii.  Upon information and belief, Cottman failed to represent the best interests of Plaintiffs with whom Cottman had executed a listing agreement; Cottman would not advise potential purchasers of Cottman System franchises that it had listed for sale, but instead would attempt to sell prospective franchisees those Cottman System stores that Cottman owned, which it had purchased back from failing franchisees.

30.  As a result of Cottman's and Ross' breaches of fiduciary duties owed to Plaintiffs, Plaintiffs have suffered damages in an amount to be determined at trial but which are separate and apart from the rescission damages that they have incurred in investing in the franchise.

## COTTMAN'S RICO VIOLATIONS

31.  In addition to the breaches of its other duties, Cottman has violated the federal Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 et seq. (the "RICO Statute").

32.     Cottman is a corporation and is capable of holding a legal or beneficial interest in property.

33.     The relationship between Cottman, Ross, and Cottman Communications constitutes an association in fact enterprise because Cottman, Ross, and Cottman Communications are separate corporate entities that are engaged in a continuous pattern of racketeering activities as follows:

    i.  Cottman makes false and misleading representations to induce franchisees into purchasing Cottman System franchises, which requires franchisees to sign franchise agreements pursuant to which franchisees must pay Cottman advertising fees for advertising that is to be produced and placed by Ross;

    ii.  Cottman and/or Ross establish personal advertising "accounts" for franchisees, and Ross deliberately overspends, overcharges, and/or falsely accounts for the advertising provided to each franchisee's "account";

    iii.  Cottman and/or Ross conspire together to make false and misleading representations to franchisees about individual franchisees' "accounts", including providing false and misleading statements about (a) the type and amount of advertising that was provided for individual "accounts", (b) the actual costs of the advertising that was produced and purchased by Ross, (c) the amounts of advertising payments and additional payments that Cottman received from franchisees, and (d) the amounts of additional payments that franchisees owed to Cottman for the "accounts;"

    iv.  Cottman, Cottman Communications and/or Ross conspire together to use wrongful threats of economic harm, including threats of legal action, termination of franchise agreements, cessation of telephone services held by Cottman Communications, and cessation of Ross' continued advertising support to acquire money and property from Plaintiffs.

34.     This pattern of racketeering activities is accomplished through the use of the following:

i. Cottman and/or Ross use both the mails, private couriers, and transmittals via phone line and computer to deliver false and fraudulent information relating to the Cottman System and individual advertising "accounts" to franchisees before and after franchisees have executed franchise agreements with Cottman;

ii. Cottman, Cottman Communication, and/or Ross use wrongful threats of economic harm, including threats of legal action, the termination of franchise agreements, the cessation of franchisees' telephone services, and the cessation of Ross' continued advertising support, to acquire money and property from Plaintiffs to which Cottman was not contractually entitled.

35.     The enterprise consisting of Cottman, Ross, and Cottman Communications have frequently committed these activities and have, despite numerous requests from franchisees to cease such activities, refused to cease these activities; by all indications, their activities are continuing, and will continue.   The activities engaged in by Cottman, Ross, and Cottman Communications have affected interstate commerce, as these activities have been directed to franchisees throughout various jurisdictions of the United States.

36.     As a result of Cottman's RICO Statute violations, Plaintiffs have suffered damages in an amount to be determined at trial but which are separate and apart from the other damages that they have incurred in investing in their franchises.

## COUNT ONE
## VIOLATION OF THE MINNESOTA FRANCHISE ACT –
## MINN. STAT. §§ 80C.01 ET SEQ. PLAINTIFFS SHARIE JANITSCHKE, S&G
## JANITSCHKE, INC. AND A&T JANITSCHKE, INC.
## AGAINST DEFENDANT COTTMAN

37.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

38.     Under the terms of the applicable law of the State of Minnesota, Plaintiffs Sharie Janitschke, S&G Janitschke, Inc. and A&T Janitschke, Inc. are franchisees, and Defendant Cottman is a franchisor, within the meaning of 80C.01 et seq.

39.     Further, under the terms of the Minnesota Act, it is unlawful for a franchisor to engage in any of the following conduct:

(a) Make or cause to be made any untrue statement of material fact in any application, notice, report, or other document filed with the Commissioner, or omit to state in any application, notice, report, or other document any material fact which is required to be stated therein, or fail to notify the Commissioner of any material changes, as required by the Minnesota Franchise Act;

(b) Sell a franchise in Minnesota by means of any written or oral communication which includes an untrue statement of material fact or which omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading;

(c) Make or cause to be made any statement or representation that other individuals are willing to enter into a franchise agreement substantially similar to that being offered, granted, or sold without, at the same time, disclosing in writing the source of such information and the names, addresses, and telephone numbers of such individuals;

(d) Make or cause to be made any statement or representation that is contrary to any disclosure made in the public offering statement;

(e) Make or cause to be made any statement or representation with regard to projections of operations or of income or gross or net profits capable of being obtained from operation of the franchise by the franchisee without written disclosure of the number of the franchisor's existing franchised businesses that have, to the franchisor's knowledge, actually obtained that projected level;

(f) Make or cause to be made any statement or representation with regard to the income experiences or net worth of the franchisor or its franchisees without written disclosure whether certified financial statements are available and, if so, from what source;

(g) Make or cause to be made any statement or representation with regard to the date by which a prospective franchisee's business will be totally

operational without written disclosure of the basis on which the date has been determined;

(h) Make or cause to be made any statement or representation with regard to recovery of a portion or all of a franchisee's fee or other investment from the franchisor without written disclosure whether such fee or investment is secured or guaranteed, and, if so, in what manner;

(i) Make or cause to be made any statement or representation with regard to the nature and number of locations appropriate for the franchisee's enterprise, whether or not to be obtained by the franchisor, without disclosing in writing by whom such sites are to be secured, the manner by which their procurement is to be financed, the relationship between such site procurement and the execution of a franchise agreement, and with whom the franchisor has a binding obligation for the procurement of such locations;

(j) Fail to state in writing the qualifications and experience that the prospective franchisee should possess in order to successfully operate the business that is the subject of the franchise offered, or the additional personnel that will be required for the operation of the business if such qualifications and experience are not possessed by the prospective franchisee;

(k) Misrepresent the number of similar franchises of the franchisor that are conducting business or have conducted business within a given area at any time; or

(l) Misrepresent that the franchise agreement and all of its obligations is or are embodied in one or several documents presented to, made available to, or executed by the prospective franchisee when, in fact, the execution of additional documents or the giving by the franchisee of additional consideration is required to obtain the franchise or that the execution of some of the documents is not related to or necessary for the acquisition of the franchise.

40.    Cottman has violated the law of the State of Minnesota by making the following false representations and material omissions:

i.    That Cottman System franchisees do not need automotive experience to succeed (Exhibit 5, p.1);

ii.    That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

iii. That the average sales for Cottman System franchisees was over $500,000 (Exhibit 2, pp. 39, 138-142);

iv. That the average profit realized by Cottman System franchisees was over $100,000 (Exhibit 2, pp. 39, 138-142);

v. That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years (Exhibit 2, pp. 40-41);

vi. That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets (Exhibit 2, p. 33);

vii. That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media (Exhibit 2, p. 33);

viii. That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center." (Exhibit 3, ¶ 9(c); Exhibit 5, p.2);

ix. That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance (Exhibit 6; Exhibit 3, ¶ 5);

x. That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians (Exhibit 3, ¶ 5; Exhibit 5; Exhibit 6);

xi. That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff." (Exhibit 4, p.1); and

xii. That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores (Exhibit 4, p.1).

41. Further, under the terms of the law of Minnesota, Defendant Todd P. Leff is jointly and severally liable as a "control person" of Defendant Cottman.

42.     Under the terms of the Act, and as a result of Cottman's unlawful conduct, Plaintiffs Sharie Janitschke, S&G Janitschke, Inc. and A&T Janitschke, Inc. are entitled to rescind their franchise agreements and recover damages as well as their costs and attorneys' fees.

43.     While the precise amount of Plaintiffs' damages cannot now be determined with precision, such damages are in excess of $75,000.  A more precise amount to which Plaintiffs are entitled will be presented at a trial on the merits of this matter.

**COUNT TWO**
**VIOLATION OF THE IOWA FRANCHISE ACT § 537A.10**
**DAN HARRINGTON, RD&M, INC., RD TRANS, INC., JAMES HODINA, SHAWN**
**HODINA AND SLOTSKY ENTERPRISES, INC.,AGAINST DEFENDANT COTTMAN**

44.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

45.     Under the terms of the applicable law of the State of Iowa, Plaintiffs Dan Harrington, RD&M, Inc., RD Trans, Inc., James Hodina, Shawn Hodina, and Slotsky Enterprises, Inc. are franchisees, and Defendant Cottman is a franchisor, within the meaning of Iowa Code § 537A.10.

46.     Further, under the terms of the Iowa Act, it is unlawful for a franchisor  to require franchisees such as Plaintiffs to use Ross as the sole source for Plaintiffs' advertising services, when advertising services of comparable quality are available from sources other than Ross.

47.     Cottman has violated the law of the State of Iowa by requiring the Plaintiffs to use Ross as the sole source for Plaintiffs' advertising services, when advertising services of comparable quality are and were available from sources other than Ross;

48.    Further, under the terms of the Iowa Act, franchisors such as Cottman have a duty of good faith and fair dealing in the performance and enforcement of franchise agreements.

49.    Cottman has violated the law of the State of Iowa by violating its duty of good faith and fair dealing with Plaintiffs, as set forth more fully above.

50.    Under the terms of the Iowa Act, and as a result of Cottman's unlawful conduct, Plaintiffs Dan Harrington, RD&M, Inc., RD Trans, Inc., James Hodina, Shawn Hodina, and Slotsky Enterprises, Inc. are entitled to rescind their contracts, recover damages, as well as costs and attorneys' fees.

51.    While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000.  A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

### COUNT THREE
### VIOLATION OF THE WISCONSIN FRANCHISE INVESTMENT LAW –
### WIS. STAT. §§ 553.01 ET SEQ.
### PLAINTIFFS DOUGLAS R. SPEER AND D&C SPEER INVESTMENTS, LLC
### AGAINST DEFENDANTS COTTMAN AND LEFF

52.    Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

53.    Under the terms of the applicable law of the State of Wisconsin, Plaintiffs Douglas R. Speer and D&C Speer Investments, LLC are franchisees, and Defendant Cottman is a franchisor.

54.    Further, under the terms of the Wisconsin Act, it is unlawful for a franchisor to engage in any of the following conduct:

(a) Making or causing to be made, in any document filed with the Division or in any proceeding under Wisconsin law any statement which is, at the time and in the light of the circumstances under which it is made, false or misleading in any material respect or, in connection with any statement required to be made under the WFIL, omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which they are made, not misleading; or

(b) Offer or sell a franchise in Wisconsin by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.     Cottman has violated the law of the State of Wisconsin by making the following false representations and material omissions:

    i.   That Cottman System franchisees do not need automotive experience to succeed (Exhibit 5, p.1);

    ii.  That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

    iii. That the average sales for Cottman System franchisees were over $500,000 (Exhibit 2, pp. 39, 138-142);

    iv.  That the average profit realized by Cottman System franchisees was over $100,000 (Exhibit 2, pp. 39, 138-142);

    v.   That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years (Exhibit 2, pp. 40-41);

    vi.  That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets (Exhibit 2, p. 33);

    vii. That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media (Exhibit 2, p. 33);

    viii. That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising

to effectively "focus solely on your market and the area surrounding your center."  (Exhibit 3, ¶ 9(c); Exhibit 5, p.2);

ix. That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance (Exhibit 6; Exhibit 3, ¶ 5);

x. That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians (Exhibit 3, ¶ 5; Exhibit 5; Exhibit 6);

xi. That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff." (Exhibit 4, p.1);

xii. That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees; and

xiii. That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores (Exhibit 4, p.1).

56.    Further, under the terms of the law of Wisconsin, Defendant Todd P. Leff is jointly and severally liable as a "control person" of Defendant Cottman.

57.    Under the terms of the Act, and as a result of Cottman's unlawful conduct, Plaintiffs Douglas R. Speer and D&C Speer Investments, LLC are entitled to rescind their franchise agreement and recover damages.

58.    While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000.  A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT FOUR
## VIOLATION OF THE ILLINOIS FRANCHISE INVESTMENT LAW—
## 815 ILL. COMP. STAT. §§ 705/1 ET SEQ.

**PLAINTIFF JESSENEM CORPORATION AGAINST DEFENDANTS
COTTMAN AND LEFF**

59.     Plaintiff reallegeS and incorporates by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

60.     Under the terms of the applicable law of the State of Illinois, Plaintiff Jessenem Corporation is a franchisee, and Defendant Cottman is a franchisor, within the meaning of 815 Ill. Comp. Stat. § 705/3.

61.     Further, under the terms of the Illinois Act, it is unlawful for a franchisor to engage in any of the following conduct:

> (a) Make or cause to be made any untrue statement of material fact in any application, notice, or report filed with the [State] Administrator, or to omit to state in any application, notice, or report any material fact, or to fail to notify the Administrator of any material change in such application, notice, or report;
>
> (b) Employ any device, scheme, or artifice to defraud;
>
> (c) Make any untrue statement of material fact or omit to state a material fact necessary  in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
>
> (d) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

62.     Cottman has violated the law of the State of Illinois by making the following false representations and material omissions:

> i.   That Cottman System franchisees do not need automotive experience to succeed (Exhibit 5, p.1);
>
> ii.  That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.
>
> iii. That the average sales for Cottman System franchisees were over $500,000 (Exhibit 2, pp. 39, 138-142);

iv. That the average profit realized by Cottman System franchisees was over $100,000 (Exhibit 2, pp. 39, 138-142);

v. That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years (Exhibit 2, pp. 40-41);

vi. That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets (Exhibit 2, p. 33);

vii. That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media (Exhibit 2, p. 33);

viii. That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center."  (Exhibit 3, ¶ 9(c); Exhibit 5, p.2);

ix. That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance (Exhibit 6; Exhibit 3, ¶ 5);

x. That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians (Exhibit 3, ¶ 5; Exhibit 5; Exhibit 6);

xi. That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff." (Exhibit 4, p.1);

xii. That Plaintiff who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees; and

xiii. That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores (Exhibit 4, p.1).

63.    Further, under the terms of the law of Illinois, Defendant Todd P. Leff is jointly and severally liable as a "control person" of Defendant Cottman.

64.     Under the terms of the Act, and as a result of Cottman's unlawful conduct, Plaintiff Jessenem Corporation is entitled to recover damages, as well as costs and attorneys' fees.

65.     While the precise amount of this Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000.  A more precise amount to which this Plaintiff is entitled will be presented at a trial on the merits of this matter.

**COUNT FIVE**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT – 815 ILL. COMP. STAT. §§ 505/1 ET SEQ.**
**PLAINTIFF JESSENEM CORPORATION AGAINST DEFENDANT COTTMAN**

66.     Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

67.     Under the terms of the applicable law of the State of Illinois, Plaintiff Jessenem Corporation is a "person" under the terms of the Illinois Act.

68.     Further, under the terms of the Illinois Act, it is unlawful for a Defendant such as Cottman to utilize unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with the intent that others rely upon the concealment, suppression, or omission of material fact in the conduct of any trade or commerce.

69.     Cottman has violated the law of the State of Illinois by making the following false representations and material omissions:

> i. That Cottman System franchisees do not need automotive experience to succeed (Exhibit 5, p.1);

ii. That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

iii. That the average sales for Cottman System franchisees were over $500,000 (Exhibit 2, pp. 39, 138-142);

iv. That the average profit realized by Cottman System franchisees was over $100,000 (Exhibit 2, pp. 39, 138-142);

v. That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years (Exhibit 2, pp. 40-41);

vi. That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets (Exhibit 2, p. 33);

vii. That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media (Exhibit 2, p. 33);

viii. That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center."  (Exhibit 3, ¶ 9(c); Exhibit 5, p.2);

ix. That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance (Exhibit 6; Exhibit 3, ¶ 5);

x. That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians (Exhibit 3, ¶ 5; Exhibit 5; Exhibit 6);

xi. That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff." (Exhibit 4, p.1);

xii. That Plaintiff who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees; and

       xiii.  That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores (Exhibit 4, p.1).

70.    Under the terms of the Act, and as a result of Cottman's unlawful conduct, Plaintiff Jessenem Corporation is entitled to recover damages.

71.    While the precise amount of this Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000.  A more precise amount to which this Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT SIX
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT – 815 ILL. COMP. STAT. §§ 505/1 ET SEQ.
## PLAINTIFF JESSENEM CORPORATION AGAINST DEFENDANT COTTMAN AND/OR ROSS

72.    Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

73.    Under the terms of the applicable law of the State of Illinois, Plaintiff Jessenem Corporation is a "person" under the terms of the Illinois Act.

74.    Further, under the terms of the Illinois Act, it is unlawful for Defendants such as Cottman and/or Ross to utilize unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with the intent that others rely upon the concealment, suppression, or omission of material fact in the conduct of any trade or commerce.

75.     By and through the following conduct, Cottman and/or Ross have violated the law of the State of Illinois:

> (a) Ross placed advertisements for Plaintiff that contained significant errors;
>
> (b) After advising Plaintiff that Ross was going to use its "group buying power" to achieve lower prices, Ross consistently failed to secure lower prices for Plaintiff (despite representing nearly 400 franchisees in the Cottman System, Plaintiff was able to secure lower prices themselves for advertising such as "yellow pages" telephone listings, but nonetheless were forced by Cottman to allow Ross to place the franchisees' advertising – all without any explanation of the higher prices);
>
> (c) After establishing an individual "account" for Plaintiff, Ross overspent and overcharged its "account"; furthermore, Ross and Cottman demanded additional payments from Plaintiff over and above the advertising fees due under the franchise agreement;
>
> (d) Ross and/or Cottman failed to refund or utilize the unspent amounts in Plaintiff's account when it closed its franchise; and
>
> (e) Both Cottman and Ross have refused to provide Plaintiff an accounting of Plaintiff's individual accounts, including an accounting of the amounts paid by Plaintiff, and evidence of the purchases and actual placements of advertisements on behalf of Plaintiff.

76.     Under the terms of the Act, and as a result of Cottman's and/or Ross' unlawful conduct, Plaintiff Jessenem Corporation is entitled to recover damages.

77.     While the precise amount of this Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000.  A more precise amount to which this Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT SEVEN
## COMMON LAW FRAUD AGAINST DEFENDANT COTTMAN

78.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

79.     Defendant made false and material misrepresentations and omissions of fact to the Plaintiffs, as set forth above.  Defendant made such statements and material omissions knowing that they were false and intending that Plaintiffs rely upon them in deciding to enter into franchise agreements with Cottman and to invest hundreds of thousands of dollars in a franchise.

80.     The Plaintiffs reasonably relied upon the false representations and material omissions of Defendant in making the decision to enter into a franchise and invest in a Cottman System franchise as described more fully above.

81.     As a result of the Plaintiffs' reliance upon the false representations of Defendant, the Plaintiffs have lost thousands of dollars.

82.     The Plaintiffs are entitled to rescind their franchise agreements and to recover from Defendant rescission damages, consisting of the total of the amount invested in their franchises, the total lost as a result of operation of the franchises, the amount invested in mitigating damages, less the consideration received from Defendant and any other benefits received from the franchises as well as the salvage value of the assets, plus interest.

## COUNT EIGHT
## NEGLIGENT MISREPRESENTATION AGAINST DEFENDANT COTTMAN

83.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

84.     Defendant identified above had a duty to use reasonable care in making representations and statements to prospective and new franchisees and to take

reasonable care to ensure that such statements and representations were not false or misleading.

85.     Defendant breached their duty of care to Plaintiffs by making false and misleading representations and material omissions as set forth above.

86.     The Plaintiffs reasonably relied upon the false representations of Defendant and its representatives in deciding to enter into their franchise agreements and to invest in Cottman System franchises.

87.     The Plaintiffs are entitled to rescind their franchise agreements and to recover from Defendant rescission damages, consisting of the total of the amount invested in their franchises. the total lost as a result of operation of the franchises, the amount invested in mitigating damages, less the consideration received from Defendant and any other benefits received from the franchises as well as the salvage value of the assets, plus interest.

## COUNT NINE
## BREACH OF CONTRACT AND THE
## COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANT
## COTTMAN

88.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

89.     In every contract, by operation of law, there is an implied covenant of good faith and fair dealing, which requires the parties to the agreement to act in good faith and in accordance with reasonable standards of fair dealing in the trade.  The implied covenant also prohibits either party from engaging in any conduct or in doing anything that deprives the other party of the fruits of the agreement or the benefit of the bargain. The implied covenant requires that Defendants act reasonably in the performance of

their duties, and, among other things, refrain from engaging in conduct that would cause Plaintiffs to operate at losses or to take actions that would cause Plaintiffs' businesses to fail.

90.    Cottman has breached its express contractual duties and the implied covenant of good faith and fair dealing to Plaintiffs by violating the terms of the parties' agreements, and Plaintiffs' reasonable expectations of Defendant' performance, support, and assistance as prescribed under the parties' franchise agreements and as described more fully above.

91.    While the precise amount of Plaintiffs' damages cannot now be determined with precision, such damages are in excess of $75,000.  A more precise amount to which Plaintiffs are entitled will be presented at a trial on the merits of this matter.

<u>**COUNT TEN**</u>
<u>**BREACH OF FIDUCIARY DUTY AGAINST DEFENDANTS COTTMAN**</u>
<u>**AND/OR ROSS**</u>

92.    Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

93.    The Defendants' conduct as alleged above created a fiduciary relationship between Defendants and Plaintiffs and imposed fiduciary duties on Defendants in favor of the Plaintiffs.  In particular, Defendants acted as agents for Plaintiffs with respect to purchasing and placing advertisement, management of Plaintiffs' advertising accounts, accounting for the amounts spent on behalf of individual Plaintiffs by Defendant Cottman through its affiliate, Ross, and as to acting as the listing agent for the sale of certain Plaintiffs' franchises.

94.     The Defendants' actions, as described above, constitute breaches of their fiduciary duties toward Plaintiffs.

95.     Each breach by the Defendants of their fiduciary duties was a proximate cause of damages to each Plaintiff and entitles Plaintiffs to receive, as disgorgement, all amounts Plaintiffs paid to Defendants for advertising fees, and an accounting for the Plaintiffs' account.

## COUNT ELEVEN
## VIOLATION OF RICO:  18 U.S.C. § 1962(b) AGAINST DEFENDANT COTTMAN

96.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

97.     Cottman has violated the civil provisions of the RICO Statute as described more fully below.

98.     Under 18 U.S.C. § 1964(c)

> any person injured in his business or property by reason of a
> violation of section 1962 of this chapter may sue therefore in
> any appropriate United States district court and shall recover
> threefold the damages he sustains and the cost of the suit,
> including a reasonable attorneys' fee....

99.     Under 18 U.S.C. § 1961(3), a "person" for the purposes of the Civil RICO statute is defined as "any individual or entity capable of holding a legal or beneficial interest in a property."

100.    The RICO statute defines the term "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

101. Cottman is a "person" within the meaning of the RICO Statute, as set forth above. The association of Cottman and Ross constituted an "enterprise" as that term is defined in the RICO Statute.

102. Under 18 U.S.C. § 1962(b):

> [I]t is unlawful to acquire or maintain any interest in, or control of, any enterprise that is engages in or affects interstate or foreign commerce through a pattern of racketeering activity or collection of any unlawful debt.

103. Section 1961(1) of RICO defines "racketeering activity" to include any of the enumerated predicate acts listed in section 1961(1). Included in the list of predicate acts are "extortion", "mail fraud" and "wire fraud."

104. Under 18 U.S.C. § 1951(b)(2), extortion is defined as follows:

> The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

> Under 18 U.S.C. § 1341, mail fraud is defined as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises … for the purpose of executing such a scheme of artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing....

> Under 18 U.S.C. § 1343, wire fraud is defined as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, television, communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such a scheme or artifice...

105.    At all times relevant to the claims made herein, Cottman has acquired and maintained an interest in, and control of, the enterprise consisting of both Cottman, Ross, and Cottman Communications, and their collusion together, by engaging in the false, fraudulent, and illegal acts set forth above, which took place in interstate commerce, which constituted acts of extortion, wire fraud and mail fraud – i.e., sending misleading and false offering circulars and other documents through the mails, making false and fraudulent statements via the telephone and otherwise, and using wrongful threats of economic harm to obtain property from franchisees which Cottman was not contractually entitled.

106.    The activities of the enterprise of Cottman and Ross constituted a pattern of racketeering in that it was both continuous and related: the false acts were all intended to induce scores of persons to become franchisees of Cottman; to assent to Ross' provision of advertising; to provide false accounting to franchisees of the amounts and costs of advertising placed by Ross; to coerce individual franchisees to pay Cottman more money than they were obligated to pay under their franchise agreements; and to acquire title to certain failed franchises.  Defendants induced many persons to become franchisees under franchise agreements pursuant to which they would continue to pay Cottman for advertising fees for many years, and the scheme threatens to continue.

107.   Plaintiffs have been injured in their business and property as a result of Defendant's violations of 18 U.S.C. § 1862(b).   Specifically, Plaintiffs have been deprived of the amounts that they paid to Cottman pursuant to the franchise agreements, and for additional amounts.   As a direct and proximate result of Defendant's violations of 18 U.S.C. § 1862(b), Plaintiffs have suffered damages in an amount undetermined at this time, but believed to be in excess of $75,000, which will be demonstrated at trial.

### COUNT TWELVE
### VIOLATION OF RICO:  18 U.S.C. § 1962(c) AGAINST COTTMAN

108.   Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

109.   Under 18 U.S.C. § 1962(c):

> It is unlawful for any person to conduct or participate in the conduct of the affairs of an enterprise that is engaged in or affects interstate or foreign commerce through a pattern of racketeering activity or collection of an unlawful debt.

110.   At all times relevant hereto, Cottman has either conducted or participated in an ongoing and continuous enterprise designed to induce scores of persons to become franchisees of Cottman; to assent to Ross' provision of advertising services as individual franchisees' agents; and to coerce individual franchisees to pay more money than they were obligated to pay under their franchise agreements, which continuous effort constituted a pattern of racketeering activity.

111.   The enterprise engaged in interstate commerce to accomplish its scheme of defrauding, deceiving, and threatening Plaintiffs, and its actions affected interstate

commerce in that the amounts Cottman received were based on the sale and purchase of items that crossed state lines.

112.    Defendant's receipt of the funds paid by Plaintiffs harmed Plaintiffs' businesses in that those amounts should have inured to the Plaintiffs' benefit, rather than that of Cottman.

113.    Plaintiffs have been injured in their business and property as a result of Defendants' violations of 18 U.S.C. § 1862(c).   Plaintiffs have been deprived of the amounts that they paid to Cottman pursuant to the franchise agreements, and for additional amounts.   As a direct and proximate result of Cottman's violations of 18 U.S.C. § 1862(c), Plaintiffs have suffered damages in an amount undetermined at this time, but believed to be in excess of $75,000, which will be demonstrated at trial.

## COUNT THIRTEEN
## VIOLATION OF RICO:  18 U.S.C. § 1962(d) AGAINST DEFENDANT COTTMAN

114.    Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

115.    Under 18 U.S.C. § 1962(d) it is unlawful:

> For any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

116.    At all times relevant hereto, Defendant Cottman has conspired with Ross and Cottman Communications in violation of Sections 1962(b) and (c), as alleged above.

117.    Plaintiffs have been injured in their business and property as a result of Defendant's violations of 18 U.S.C. § 1862(b).   Specifically, Plaintiffs have been deprived of the amount of the money that Cottman has obtained unlawfully by reason of

the conspiracy.  As a direct and proximate result of Cottman's violations of 18 U.S.C. §

1862(d), Plaintiffs have suffered damages in an amount undetermined at this time, but

believed to be in excess of $75,000, which will be demonstrated at trial.

**WHEREFORE**, the Plaintiffs respectfully request that this Court enter judgment:

A. Rescinding the franchise agreements of the Plaintiffs;

B. Enjoining Defendants' continued violation of state franchise protection and consumer fraud acts;

C. Awarding rescission damages consisting of the amount that they have invested in the franchise less consideration received and the salvage value of the franchise;

D. Awarding such compensatory, consequential and incidental damages as the franchisees have suffered; and

E. Awarding attorneys' fees and costs such other and further relief as this Court deems just and proper.

Dated:      December 13, 2005.          DADY & GARNER, P.A.


       /s/ William S. Fulton, Jr.
J. Michael Dady, Esq. (2062X)
Ronald K. Gardner, Esq. (246797)
William S. Fulton, Jr., Esq. (032842X)
4000 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 359-9000

**ATTORNEYS FOR PLAINTIFFS**