## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **S&G JANITSCHKE, INC, et al.,** | Civil No. 05-2896 (DSD/SRN) |
| **Plaintiffs,** | |
| **v.** | **REPORT AND** |
| | **RECOMMENDATION** |
| **COTTMAN TRANSMISSION** | |
| **SYSTEMS, LLC, ROSS** | |
| **ADVERTISING, INC., and** | |
| **TODD P. LEFF,** | |
| **Defendants.** | |

Ronald K. Gardner, Esq. and  David Koob, Esq. on behalf of Plaintiffs

William L. Killion, Esq. on behalf of Defendants

SUSAN RICHARD NELSON,  United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. No. 3).  The motion has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.    BACKGROUND

Plaintiffs are all current or former franchisees (operators) of Defendant Cottman Transmission Systems, LLC (Cottman) who signed, either individually or through a business entity, a franchise license agreement with Cottman or its predecessor. (Amend. Compl. ¶ 9.)  Cottman is a Delaware corporation with its principal place of business in Pennsylvania.  (Id. ¶ 10.)  Defendant Ross Advertising, Inc. (Ross) is Cottman's in-house advertising agency, and was incorporated in Pennsylvania.  (Id.)  Defendant Todd P. Leff (Leff) is both President and Chief Executive Officer of Cottman;

he has held these positions since 1998.  (Id.)  Leff has direct control of Cottman and

executed the subject license agreements at issue in this case on behalf of Cottman.

(Id.)  Leff is a resident of Pennsylvania.  (Id.)

The Cottman license agreements generally contain choice of law and forum

selection clauses that provide:

> This Agreement and all related agreements have been entered into in
> the Commonwealth of Pennsylvania and any matter whatsoever which arises
> out of or is connected in any way with the Agreement of the franchise shall
> be governed by and construed and enforced in accordance with the laws of
> the Commonwealth of Pennsylvania.
>
> a.   With respect to any legal proceedings arising out of or connected in
>      any way to this Agreement or the franchise, OPERATOR and
>      COTTMAN consent to the jurisdiction and venue of any court of
>      general jurisdiction of Montgomery County, Pennsylvania or the
>      United States District Court for the Eastern District of Pennsylvania,
>      and any legal proceedings arising out of this Agreement shall be
>      brought only in such courts . . . .

(See e.g., Amended Complaint Ex. 2, part 3 at 17 ¶ 29; McPeak Aff. Ex. 3 ¶ 29.)  Other

than the Illinois plaintiff, all of the plaintiffs executed choice of law and venue provisions

identical to or substantially similar to the above text. (McPeak Aff. ¶ 6-8.)  Defendants

concede that the Illinois plaintiff's license agreement with Cottman "is silent as to

venue."  (Defs.' Mem. at 15 n.3.)  The Illinois license agreement does provide a

"controlling law provision" which reads:

> This Agreement shall be deemed to have been made within the
> Commonwealth of Pennsylvania and shall be interpreted according to the
> laws of Pennsylvania.  If there is a conflict between Pennsylvania law and the
> Illinois Franchise Disclosure Act ("Act"), the OPERATOR's rights shall be
> governed by the Act. . . . If any provisions of the foregoing Agreement
> governing Termination or Renewal are inconsistent with Illinois laws, 815
> ILCS 705/19 and 705/20, then said Illinois Law shall control.

(McPeak Aff. Ex. 4 ¶ 28.)  Unlike the other license agreements, the license agreements

executed by the six California plaintiffs contain arbitration provisions.  (Id. ¶ 8.)  Finally, the license agreement executed by the three Minnesota plaintiffs also provides in part: "Minnesota Statute Sec. 80C.21 and Minn. Rule 2860.4400J prohibit us from requiring litigation to be conducted outside Minnesota."  (Id. Ex. 11 ¶ 29.)

In response to a prior suit filed against Cottman by some of the plaintiffs to the present action, those parties previously executed a standstill agreement to allow the parties to negotiate a settlement of the dispute.  (Pls.' Response at 4.)  In November 2005, Plaintiffs' counsel advised Cottman that the plaintiffs to the prior action intended to terminate the standstill agreement on December 11, 2005.  (Id.)  On December 12, 2005, Cottman filed a declaratory judgment action in the Eastern District of Pennsylvania which names as defendants some of the plaintiffs to the present action and which seeks a declaration concerning some of the claims which Plaintiffs allege in this action.  (Id.)

On December 14, 2005, Plaintiffs filed their first complaint with this Court.  (Doc. No. 1.)  On December 15, 2005, Plaintiffs' counsel also filed an action in the Eastern District of New York naming as plaintiffs sixteen different Cottman franchisees than those named in this lawsuit but alleging similar claims as those presented here. (McPeak Aff. ¶ 4.)  On January 20, 2006, Plaintiffs filed an Amended Complaint. (Amend. Compl.)  Plaintiffs' Amended Complaint names ninety-two plaintiffs from twenty-three states and the Virgin Islands.  (See id. Ex. 1.)[1]  In their Amended

---

[1] On April 19, 2006, the trial court, the Honorable District Court Judge David S. Doty presiding, dismissed three of the eight plaintiffs located in Georgia.  (Doc. No. 23.) Defendants also contend that some, although not all, of the California Plaintiffs have either signed releases concerning this litigation or entered into settlement agreements

Complaint, Plaintiffs seek to rescind their franchise agreements and obtain damages for

Defendants' alleged fraud, breaches of contract and fiduciary duty, and violations of

state franchise statutes, consumer unfair trade practices statutes, and the federal

Racketeer Influenced and Corrupt Organizations (RICO) Act.  (Id. at 4.)  Plaintiffs allege

that, "[a]s President and Chief Executive Officer of Cottman, Leff has direct control of

Cottman and has materially aided in the pre-signing representations made to Plaintiffs."

(Id. ¶ 10.)

At present, there are at least three actions pending in federal court concerning

Cottman's franchisees: (1) the one before this Court; (2) Defendants' declaratory

judgment action in the Eastern District of Pennsylvania; and (3) the New York action.

Cottman also represents that it has filed Pennsylvania state court actions against a

number of the plaintiffs in this action which predate the filing of this action.  (Defs. Mem.

at 4 n. 1.)

## II.    PARTIES' POSITIONS

Defendants now move to dismiss Plaintiff's claims or, in the alternative, to have

the case transferred to the Eastern District of Pennsylvania.  (Doc. No. 3.)  Defendants

base their motion to dismiss on Federal Rules of Civil Procedure 12(b)(1), 12(b)(2),

12(b)(3), and 12(b)(6).  (Defs.' Mem. at 7-15, 18-28.)  They argue: (1) the presence of

the forum selection clause in the license agreements and the factors weighed when

reviewing a transfer motion warrant dismissal of this entire action, because venue in the

District of Minnesota is improper, or transfer of the entire case to the Eastern District of

_____

with Cottman.  (Defs.' Mem. at 4.)

Pennsylvania; (2) the presence of the arbitration provision in the six California plaintiffs'
license agreements leaves this Court without subject matter jurisdiction to hear those
plaintiffs' claims or supports dismissal on the grounds that those plaintiffs have failed to
state claims upon which relief may be granted; and (3) Leff has insufficient contacts with
Minnesota for this Court to exercise jurisdiction over him.  (Id. at 7-28.)

Plaintiffs respond that the Court should honor Plaintiffs' choice of
forum—Minnesota— for several reasons.  (Pls.' Response at 10-21.)  First, Plaintiffs
contend that the laws of Minnesota, Iowa, Illinois, and Wisconsin, apply to some of the
claims brought by some of the plaintiffs and that those laws prohibit enforcement of the
forum selection clause as to those plaintiffs.  (Id. at 11-16.)  According to Plaintiffs,
considerations of judicial economy warrant keeping all of the plaintiffs and their
respective claims together; they argue the entire case should be allowed to proceed in
the District of Minnesota.  (Id. at 17-21.)

Second, Plaintiffs assert that the presence of the arbitration clauses in the
California plaintiffs' license agreements, alone, does not deprive this Court of subject
matter jurisdiction to hear their claims.  (Id. at 21-22.)  Plaintiffs argue that this Court has
subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because
they allege Defendants violated the federal RICO and Robinson Patman Acts.  (Id. at
23.)  They argue diversity jurisdiction also exists under 28 U.S.C. § 1332 because the
parties in this matter are of diverse citizenship and the amount in controversy exceeds
$75,000.  (Id.)  Plaintiffs contend that federal courts routinely are asked to decide and
do decide whether valid arbitration provisions exist and whether the disputed claims are
subject to those provisions when presented with motions to compel arbitration.  (Id. at

22.)

Finally, Plaintiffs respond that this Court does possess personal jurisdiction over Leff because Leff "transacted business in [Minnesota]" by signing the license agreements between Cottman and the Minnesota plaintiffs.  (Id. at 25.)

## III.   DISCUSSION

### A.   Motion to Dismiss for Improper Venue

#### 1.    Minnesota Plaintiffs

The Minnesota plaintiffs' license agreement provides: "Minnesota Statute Sec. 80C.21 and Minn. Rule 2860.4400J prohibit us from requiring litigation to be conducted outside Minnesota."  ((McPeak Aff. Ex. 11 ¶ 29.)  Minnesota law provides that "[n]o person, whether by means of a term or condition of a franchise or otherwise, shall engage in any unfair or inequitable practice in contravention of such rules as the [Minnesota Commissioner of Commerce] may adopt defining as to franchises the words 'unfair and inequitable.'"  Minn. Stat. § 80C.14(1) (2005).  The Minnesota Commissioner of Commerce has determined that it is "unfair and inequitable" to "require a franchisee to waive his or her rights to a jury trial or to waive rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction, or to consent to liquidated damages, termination penalties, or judgment notes; provided that this part shall not bar an exclusive arbitration clause."  Minn. R. 2860.4400J.

Defendants argue that there is an "apparent conflict between the legislature's conscious decision not to include in the Minnesota Franchise Act (Minn. Stat. §§ 80C.21) a prohibition on venue selection provisions and the contradictory decision reached by the Commerce Department in interpreting that Act" and the Court should

6

favor the statute's plain meaning.  (Defs.' Mem. at 14-15.)  The Court finds that the text

of § 80C.21 expressly authorizes the Commissioner of Commerce to promulgate rules

interpreting "unfair and inequitable" practices.  The Commissioner has, in turn,

prohibited forum selection clauses like the one in the Cottman license agreement.

Therefore, the Court finds that the Cottman forum selection clause is void as applied to

the three Minnesota plaintiffs.

## 2.     Iowa Plaintiffs

Iowa law provides: "A provision in a franchise agreement restricting jurisdiction to

a forum outside this state is void with respect to a claim otherwise enforceable under

this section."  Iowa Code § 537A.10(3)(a) (2005).  Defendants argue that the forum

selection clause at issue here would only run afoul of the Iowa law if Plaintiffs pursued

their Iowa Franchise Act claims in Iowa.  (Defs.' Mem. at 12.)  Defendants contend that

Iowa has no right to extend the protection of its laws extraterritorially.  (Id.)  The Court

finds that Iowa has a legitimate interest in protecting Iowa citizens who choose to enter

into franchise agreements and later seek to void a forum selection clause based upon

Iowa law.  Therefore, the Court finds that Iowa law makes void the forum selection

clause provided in the Cottman license agreements as to the six Iowa plaintiffs.

Defendants cannot seek to revive that voided provision merely because the Iowa

plaintiffs have chosen to bring their claims in Minnesota.

## 3.     Illinois Plaintiffs

Defendants concede that the Cottman license agreement that binds the one

Illinois plaintiff in this lawsuit "is silent as to venue."  (Defs.' Mem. at 15 n.3.)  But

Defendants argue that the same analysis that applies to the Iowa plaintiffs applies to the Illinois plaintiff "with respect to the Illinois Franchise Disclosure Act."  (Id. at 13.) Illinois law provides: "Any provision in a franchise agreement that designates jurisdiction or venue in a forum outside of this State is void, provided that a franchise agreement may provide for arbitration in a forum outside of this State."  815 Ill. Comp. Stat. 705/4 (2006).  The Court finds that the Illinois plaintiff's license agreement is silent as to venue, thus the Illinois plaintiff is not prohibited from bringing his claims in Minnesota. To the extent Cottman's standard forum selection clause applies to the Illinois plaintiff, the Court finds that the standard Cottman forum selection clause is voided by Illinois law.  Defendants cannot revive that voided law merely because the Illinois plaintiff seeks to bring his claims in Minnesota.

### 4.    Wisconsin Plaintiffs

Unlike the Minnesota, Iowa, and Illinois statutes and/or the rules promulgated thereunder, Wisconsin does not expressly void forum selection clauses like the one contained in the Cottman license agreements.  Plaintiffs argue that section 553.76 of the Wisconsin Statutes supports its position that Wisconsin law voids or bars the standard Cottman forum selection clause.  (Pls.' Response at 14.)  That section provides: "Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this chapter or any rule or order under this chapter is void."  Plaintiffs, however, do not point to any other provision, rule, or order under Wisconsin's franchise laws which would invalidate the Cottman forum selection clause.  Instead, Plaintiffs cite a federal district court's interpretation of Wisconsin law as set forth in Lulling v. Barnaby's Family Inns, Inc., 482 F. Supp. 318

8

(E.D. Wis. 1980).  Plaintiffs contend that the <u>Lulling</u> court "found that it would be unreasonable to <u>require</u> Wisconsin citizens to litigate their claims based on Wisconsin law in a court in another state" (Pls.' Response at 15 (emphasis in original)).

In <u>Lulling</u>, several restaurant franchisees sued their franchisor in the Eastern District of Wisconsin for reformation of their agreements.  482 F. Supp. at 319-20.  The franchisees had entered into four agreements with the defendants: "a basic agreement, setting forth the terms of the sale; [a] franchise agreement, setting forth the rights and obligations of [the franchisees]; [the real estate lease], providing for the lease of the restaurant buildings and the land" they sat on, and an equipment lease.  <u>Id.</u> at 320.  The equipment lease, and only the equipment lease, contained a forum selection clause which required any suit to be brought in a court sited in Illinois.  <u>Id.</u> at 320.  The franchisor moved to dismiss or transfer the action based upon the Illinois forum selection clause.  In ruling on the franchisor's motion, the <u>Lulling</u> court first recognized that "the United States Supreme Court has stated that choice-of-law clauses are valid and should be enforced unless enforcement is 'unreasonable.'" <u>Id.</u> (quoting <u>The Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1 (1972)).  The court, however, determined that the "basic contract between the parties" and the real estate and franchise agreements did not contain forum selection clauses.  <u>Id.</u> at 321.  The <u>Lulling</u> court determined that, given the above circumstances, it would be "unreasonable to require Wisconsin citizens to litigate their claims based on Wisconsin law in Illinois courts."  <u>Id.</u>

The Court finds the facts of the present case substantially different than those presented in <u>Lulling</u>.  Here, the forum selection clause at issue is in the primary document binding the parties to a franchisee-franchisor relationship.  There is no doubt

the parties agreed to litigate their disputes in the courts of Pennsylvania.[2]  Thus, the

Court finds that Wisconsin law does not bar the Cottman forum selection clause.

### 5.    Remainder of Plaintiffs

Plaintiffs contend that, because the claims of some of the plaintiffs in this action

are properly venued in Minnesota, the court should exercise supplemental jurisdiction

over the remainder of the claims pursuant to 28 U.S.C. § 1367(a) to "promote judicial

economy and fairness."  (Pls.' Response at 17.)  At least as to the remaining non-

California plaintiffs, however, the issue before the Court is not whether it has subject

matter jurisdiction over Plaintiffs' claims, but whether their claims are properly venued in

Minnesota.

The Court finds that considerations of judicial economy and fairness weigh in

favor of granting Defendants' motion to dismiss the remainder of the plaintiffs' claims.

Were the Court to determine that all of the claims in this action were properly venued in

Minnesota, Defendants' declaratory judgment action would still be pending in

Pennsylvania and the claims of sixteen other Cottman franchisee would still be pending

in New York despite the substantially similar nature of the underlying disputes in those

cases.  Further, Cottman's Pennsylvania state court actions would still be pending.

Additionally, any analysis of fairness must take into account the bargain entered into by

the parties which contains a valid forum selection clause requiring litigation to be

brought in Pennsylvania.  Given the above, the Court finds that judicial economy, taken

---

[2] Whether the law of Wisconsin or some other state's law will be applied to
resolve the dispute is a separate matter for consideration by a court in Pennsylvania
and not this one.

10

in light of fairness to the contracting parties, does not favor a Minnesota venue for the claims brought by Plaintiffs other than those brought by the Minnesota, Iowa, and Illinois plaintiffs as discussed above.

Given the above findings, the Court recommends denying Defendants' motion to dismiss for improper venue as to the Minnesota, Iowa, and Illinois plaintiffs.  The Court recommends denying the rule 12(b)(3) motion as moot as to the remainder of the plaintiffs because the Court addresses the proper disposition of those plaintiffs' claims below in considering Defendants' alternative motion to transfer the action to the Eastern District of Pennsylvania.

## B.   Motion to Transfer

Defendants contend that even if some of Plaintiffs' claims survive a motion to dismiss for improper venue, the Court should use its discretion to transfer the entire action to the Eastern District of Pennsylvania.  (Defs.' Mem. at 18.)  Plaintiffs contend that a weighing of the factors properly considered when faced with a motion to transfer favors keeping the entire action in Minnesota.  (Pls.' Response at 18-21.)  Section 1404(a) of Title 28 of the United States Code provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

"[S]ection 1404(a) accords [a] district court much discretion in deciding such motions."

Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 697 (8th Cir. 1997), cert. denied, 522 U.S. 1029 (1997).  "The party seeking transfer bears the heavy burden of showing

that the balance of factors <u>strongly</u> favors the movant,"[3] <u>United Mortgage Corp. v. Plaza Mortgage Corp.</u>, 853 F. Supp. 311, 315 (D. Minn. 1994), and "federal courts give considerable deference to a plaintiff's choice of forum." <u>Terra Int'l</u>, 119 F.3d at 695. Therefore, an order to transfer venue "should not be freely granted." <u>In re Nine Mile Ltd.</u>, 692 F.2d 56, 61 (8th Cir. 1982) (per curiam), <u>abrogation on other grounds recognized by</u>, <u>Mo. Housing Dev. Comm'n v. Brice</u>, 919 F.2d 1306, 1311 (8th Cir.1990).

In ruling on a motion to transfer, courts review three general factors: (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice.  28 U.S.C. section 1404(a).  Beyond these factors, a court must make "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors" to arrive at an equitable decision.  <u>E.g.</u>, <u>Terra Int'l</u>, 119 F.3d at 691 (<u>citing</u> <u>Stewart Org., Inc v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988)).

When considering the convenience of the parties, the "normal presumption [is] in favor of a plaintiff's choice of forum" especially "where the plaintiff resides in the district in which the lawsuit was filed." <u>Graff v. Qwest Commc'ns Corp.</u>, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citations omitted); <u>see also</u> <u>K-Tel Int'l, Inc. v. Tristar Prod., Inc.</u>, 169 F. Supp. 2d 1033, 1045 (D. Minn. 2001).  Moreover, transferring venue to a court that merely shifts the inconvenience from one party to another is wholly inappropriate.

---

[3] Although the notion that a very strong showing must be made comes from <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947), a case discussing forum non conveniens, this District still requires a strong showing that transfer is favored while cognizant of the fact that a lesser showing is required than under the doctrine of forum non conveniens.  <u>See</u> <u>Brockman v. Sun Valley Resorts, Inc.</u>, 923 F. Supp. 1176, 1178-80 (D. Minn. 1996); <u>K-Tel Int'l, Inc. v. Tristar Prod., Inc.</u>, 169 F. Supp. 2d 1033, 1045 (D. Minn. 2001); <u>Graff v. Qwest Commc'ns Corp.</u>, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999).

E.g., Terra Int'l, 119 F.3d at 696-97; Alternative Pioneering Sys. v. Direct Innovative Prods., Inc., Civ. No. 4-92-278, 1992 WL 510190, at *5 (D. Minn. Aug. 20, 1992). Rather, transfer should be made only to a more convenient forum for the parties, "not to a forum likely to prove equally convenient or inconvenient." Van Dusen v. Barrack, 376 U.S. 612, 646 (1964).

When considering the convenience of the witnesses, relevant considerations include the number of non-party witnesses, the location of all witnesses, the preference of courts for live testimony as opposed to depositions, e.g., K-Tel Int'l, 169 F. Supp. 2d at 1045, and other issues concerning the "relative ease of access to sources of proof." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). This factor, however, "should not be determined solely upon a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts; the party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." Nelson v. Master Lease Corp., 759 F. Supp. 1397, 1402 (D. Minn. 1991); see also Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992); NEO Corp. v. Fortistare Methane, L.L.C., Civ. No. 01-168 JRT/FLN, 2001 WL 1640061, at *4 (D. Minn. Sept. 6, 2001).

Finally, in the interests of justice, a court may consider, among other things, the plaintiff's choice of forum, judicial economy, the parties' ability to bear the costs of litigating in each forum, obstacles to a fair trial, conflict of law issues, and advantages of having a local court determine local law. E.g., Terra Int'l, 119 F.3d at 696.

### 1.    Transfer of Minnesota, Iowa, and Illinois Plaintiffs' Claims

Three of the plaintiffs in this case are citizens of Minnesota whom this Court has found are not bound by the license agreement's forum selection clause.  Another seven plaintiffs are citizens of Iowa or Illinois whom this Court has determined are not bound by the forum selection clauses in their license agreements or for whom no such clause ever existed.  Defendants are citizens of Pennsylvania and Delaware.  (Id. ¶ 10.)  The Court finds that the convenience-of-the-parties factor favors slightly the siting of this case in Minnesota for the Minnesota, Iowa, and Illinois plaintiffs, given that those plaintiffs' choice of forum is Minnesota.  Moreover, at best, the Court finds that transferring venue to Pennsylvania would merely shift the inconvenience from one party to another.  Thus, because, at best, the transfer of the case to Pennsylvania would prove equally inconvenient to the parties as Minnesota, consideration of the convenience of the parties does not favor transfer of the claims of the Minnesota, Iowa, and Illinois plaintiffs to Pennsylvania.  See Van Dusen, 376 U.S. at 646.

Further, the Court finds that Defendants have failed to meet their burden to clearly specify the essential witnesses to be called and to provide the Court with a general statement describing their anticipated testimony.  Nelson, 759 F. Supp. at 1402; see also Scheidt, 956 F.2d at 966; NEO Corp., 2001 WL 1640061, at *4.  As a consequence, the Court finds that transfer of the case to Pennsylvania would not be more convenient for the witnesses expected to testify at trial.

Finally, the Court finds that the interests-of-justice factor favors honoring the choice of this forum by the Minnesota, Iowa, and Illinois plaintiffs.  The Court finds that

these plaintiffs are entitled to particular deference because three of these plaintiffs reside in Minnesota and the remaining seven are in adjoining or nearby states.  E.g., Graff, 33 F. Supp. 2d at 1121.  As a result of the above findings, the Court recommends denying the motion to transfer as it pertains to the Minnesota, Iowa, and Illinois plaintiffs.

## 2.    Transfer of the Remaining Plaintiffs' Claims

The remainder of the plaintiffs are citizens of twenty other states and the Virgin Islands, five of whom are citizens of Pennsylvania, the situs to which Defendants seek to have this case transferred.  (See Amend. Compl. Ex. 1.)  Given that some of the remaining plaintiffs reside in Pennsylvania and that Defendants reside or operate in Pennsylvania, the Court finds that the transfer of the case to Pennsylvania would prove slightly more convenient to the parties than would keeping the case in Minnesota. As noted above, however, because Defendants have not met their burden to clearly specify the essential witnesses to be called and to provide the Court with a general statement describing on what topics such witnesses would testify, the Court concludes that transfer of the case to Pennsylvania would not be more convenient for the witnesses expected to testify at trial.

Finally, a significant difference exists between the Minnesota, Iowa, and Illinois plaintiffs and the remaining plaintiffs when considering the interests of justice in weighing Defendants' transfer motion.  These remaining plaintiffs executed license agreements containing valid forum selection clauses which mandate that any litigation arising out of or connected in any way to the license agreement or the franchise be

brought in Pennsylvania.  (See e.g., Amended Complaint Ex. 2, part 3 at 17 ¶ 29; McPeak Aff. Ex. 3 ¶ 29.)  While the clause is not dispositive of the transfer motion, "[t]he presence of a forum-selection clause such as the [one the] parties entered into in this case [is] a significant factor that figures centrally in the [court's transfer] calculus." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  "Indeed, this court recognizes that the federal judiciary has traditionally accorded momentous weight to contracting parties' legitimate expectations in the area of forum selection."  Knutson v. Rexair, Inc., 749 F. Supp. 214, 217-218 (D. Minn. 1990).  Given the above findings, the Court recommends granting Defendants' motion to transfer with respect to the plaintiffs who are not citizens of Minnesota, Iowa, or Illinois.

**C.**   **Motion to Dismiss California Plaintiffs' Claims for Lack of Subject Matter Jurisdiction or for Failure to State a Claim Upon Which Relief May be Granted**

Defendants contend that this Court lacks subject matter jurisdiction over the California plaintiffs' claims because of the presence of the arbitration clause in those plaintiffs' license agreements.  (Defs.' Mem. at 18-19.)  Congress enacted the FAA (Federal Arbitration Act), codified at 9 U.S.C. § 1, et seq., to establish a "national policy favoring arbitration."  Southland Corp. v. Keating, 465 U.S. 1, 10 (1984).  Accordingly, there exists a strong federal presumption in favor of arbitration.  See e.g., Volt Info. Sci. v. Bd. of Trs., 489 U.S. 468, 475 (1989).  But a party cannot be compelled to arbitrate in the absence of a contractual obligation to do so.  See In re Talbott Big Foot, Inc., 887 F.2d 611, 614 (5th Cir. 1989); Genesco, Inc. v. Kakiuchi & Co., 815 F.2d 840, 847 (2d Cir. 1987).  "A court's role under the FAA is therefore limited to determining (1) whether

16

a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004) (citing Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001)). As can be inferred from the Eighth Circuit's pronouncements concerning a court's review of an arbitration clause, "an agreement between the parties to a contract to submit disputes to arbitration does not impair the constitutionally derived diversity jurisdiction of a federal district court.  The arbitration agreement limits the scope of the court's review, not its subject matter jurisdiction." John Ashe Assocs., Inc. v. Envirogenics Co., 425 F. Supp. 238, 240-43 (E.D. Pa. 1977).

Defendants do not dispute that this Court has diversity jurisdiction over the California plaintiffs' claims but merely argue that the arbitration clause in their license agreements strips the Court of subject matter jurisdiction.  The Court finds that it possesses subject matter jurisdiction over the California Plaintiffs' claims.  Because the Court has already recommended transferring the California plaintiffs' claims to the Eastern District of Pennsylvania and because Defendants have not moved to compel arbitration, however, the Court need not and does not reach the issue of whether or not the California plaintiffs' claims are subject to arbitration.  Given the above, the Court recommends denying Defendants' motion to dismiss for lack of subject matter jurisdiction and denying without prejudice Defendants' motion to dismiss for failure to state a claim upon which relief may be granted.

**D.**     **Motion to Dismiss the Claims Against Leff for Lack of Personal Jurisdiction**

**1.     Standard of Review**

While the plaintiff always carries the burden of proof, a plaintiff need only produce prima facie evidence of personal jurisdiction over a defendant to survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd., 89 F.3d 519, 522 (8th Cir. 1996); Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992), cert. denied, 506 U.S. 908 (1992).  In assessing a plaintiff's evidence, the court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor.  Digi-Tel Holdings, Inc., 89 F.3d at 522.  Any "doubt[s] should be resolved in favor of retention of jurisdiction."  V.H. v. Estate of Birnbaum, 543 N.W.2d 649, 653 (Minn. 1996).  When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings.  Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998) (citing Land v. Dollar, 330 U.S. 731, 735 n. 4 (1947) (noting that "when a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist" and "the mode of its determination is left to the trial court"))[4]

---

[4] "While in some cases it is more appropriate to test jurisdictional facts upon the proof adduced after full discovery, the court may properly address itself to the jurisdictional issue at any earlier stage of the proceedings where the affidavits and other exhibits presented on motion and opposition thereto make the issue ripe for early determination."  Block Industries v. DHJ Industries, Inc., 495 F.2d 256, 259 n.3 (8th Cir. 1974) (citations omitted).

### 2.   Due Process and Personal Jurisdiction

This Court has personal jurisdiction over a foreign defendant if a state court in Minnesota would also have jurisdiction.  See Digi-Tel Holdings, Inc., 89 F.3d at 522. Minnesota's reach over foreign defendants extends to the fullest extent permitted by the United States Constitution.  See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir. 1991) (citing Rostad v. On-Deck, Inc., 372 N.W.2d 717, 719 (Minn. 1985), cert. denied, 474 U.S. 1006 (1985)).

"[T]he constitutional touchstone [of personal jurisdiction] remains whether the defendant purposefully established 'minimum contacts' in the forum State."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."  Id. at 475 (citations omitted).  Thus, for the Court to acquire jurisdiction over a non-resident defendant, the defendant's contacts with Minnesota "must be sufficient to cause the defendant to 'reasonably anticipate being haled into court'" in Minnesota.  Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

The Eighth Circuit considers the following factors in determining whether personal jurisdiction is proper: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.  Dakota Indus., Inc. v. Dakota

19

Sportswear, Inc., 946 F.2d 1384, 1390 (8th Cir. 1991).  The first three factors are

primary factors, the remaining two are secondary factors.  Id.  The Court looks to all of

the contacts in the aggregate and examines the totality of the circumstances in making

its determination.  Northrup King. Co. v. Compania Productora Semillas Algodoneras,

S.A., 51 F.3d 1383, 1388 (8th Cir. 1995).

        The third factor, the relation of the cause of action to the contacts, distinguishes

whether the jurisdiction is specific or general. See Digi-Tel Holdings, Inc., 89 F.3d at

522 n.4.  "Specific jurisdiction refers to jurisdiction over causes of action arising from or

related to a defendant's actions within the forum state while general jurisdiction refers to

the power of a state to adjudicate any cause of action involving a particular defendant

regardless of where the cause of action arose." Id.

        Here, Plaintiffs do not allege that Leff has contacts with the state of Minnesota

that would afford this Court general jurisdiction over his person.  Instead, as alleged by

Plaintiffs, Leff's contacts with Minnesota are all related to his execution of the license

agreements which are at the heart of this litigation.  Therefore, the Court finds that

Plaintiffs' claim that personal jurisdiction exists over Leff is based on specific jurisdiction.

        Plaintiffs argue that personal jurisdiction over Leff is proper because Leff

"transacted business in [Minnesota]" by signing the license agreements between

Cottman and the Minnesota plaintiffs.  (Pls.' Response at 25.)  In their Amended

Complaint, Plaintiffs allege that, "[a]s President and Chief Executive Officer of Cottman,

Leff has direct control of Cottman and has materially aided in the pre-signing

representations made to Plaintiffs."  (Amend. Compl. ¶ 10.)  Minnesota law requires an

individual assessment of each defendant's contacts with the forum state; an individual shareholder's contacts with Minnesota "are not to be judged according to the corporation's activities" in Minnesota.  Minn. Mining and Mfg. Co. v. Rauh Rubber, Inc., 943 F. Supp. 1117, 1122 (D. Minn. 1996), aff'd, 130 F.3d 1305 (8th Cir. 1997).  Plaintiffs make no factual allegations as to what pre-signing representations Leff personally made to the Minnesota plaintiffs.  Plaintiffs do not allege that Leff traveled to Minnesota to negotiate any agreements or otherwise communicated with forum residents.  Plaintiffs merely allege that Leff, as a controlling officer of Cottman, executed the license agreements between Cottman and the Minnesota plaintiffs.  The Court finds that this allegation is not enough to confer personal jurisdiction over Leff as an individual defendant.  See Dr. Performance of Minn., Inc. v. Dr. Performance Mgmt., L.L.C., Civ. No. 01-1524, 2002 WL 31628440, at *5 (D. Minn. Nov. 12, 2002) (Doty, J.) ("[T]he existence of a contract between citizens of different states has also been held an insufficient basis for personal jurisdiction."), citing Iowa Elec. Light and Power Co. v. Atlas Corp., 603 F.2d 1301, 1303 (8th Cir.1979) ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a defendant and the forum state.")  In the absence of further factual allegations, Plaintiffs' conclusory allegation that Leff materially aided in the pre-signing representations is insufficient to warrant the exercise of in personam jurisdiction.  See Carlock v. Pillsbury Co., Civ. Nos. 87-517 and 87-586, 1988 WL 404838, at *8 (D. Minn. Jan. 4, 1988) (dismissing claims against franchisors for lack of personal jurisdiction where their contacts with forum state where based on conclusory allegations and not supported by any evidence in the record.)

After consideration of the above findings, the Court recommends granting Defendants' motion to dismiss Todd P. Leff for lack of personal jurisdiction.

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that**:

1.    Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. No. 3) be **GRANTED in part and DENIED in part** as follows:

    a.    The motion be denied in all respects as to the Minnesota, Iowa, and Illinois plaintiffs and their claims;

    b.    The motion be granted to the extent that the Clerk of Court be ordered to transfer the case, **except for the claims of the Minnesota, Iowa, and Illinois plaintiffs**, to the Eastern District of Pennsylvania;

    c.    The motion be granted to the extent that the individual defendant Todd P. Leff be dismissed from the case for lack of personal jurisdiction;

    d.    Defendant's Rule 12(b)(6) motion be denied without prejudice; and

e.      Any other relief requested by Defendants be denied.

Dated:   May 19, 2006

s/ Susan Richard Nelson

SUSAN RICHARD NELSON

United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by June 6, 2006, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Any party wishing to oppose such objections must file and serve all parties with its response.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.